ELMER EUGENE WALKER K 42310
_____
Name and Prisoner/Booking Number

CALIFORNIA HEALTH CARE FACILITY
_____
Place of Confinement

P.O. BOX 213040, D7A-105
_____
Mailing Address

STOCKTON  CA, 95213
_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

```
┌────────────────────────────┐
│           FILED            │
│        Jul 27, 2022        │
│  CLERK, U.S. DISTRICT COURT│
│ EASTERN DISTRICT OF CALIFORNIA │
└────────────────────────────┘
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

ELMER EUGENE WALKER    ,  )
_____  )
(Full Name of Plaintiff)  Plaintiff,  )
                                          )
v.                                     )    CASE NO.  2:22-cv-1327-DB (PC)
                                          )    _____
(1) JENNA NELSON, CHIEF DEPUTY   ,  )    (To be supplied by the Clerk)
_____  )
(Full Name of Defendant)  )
(2) CALIFORNIA LEGISLATIVE BODY  ,  )
_____  )
(3) THE DIRECTOR OF CORRECTIONS  ,  )    **CIVIL RIGHTS COMPLAINT**
_____  )    **BY A PRISONER**
                                          )
(4) R. BURTON, WARDEN, in STOCKTON PRISON. )
_____  )    ☑ Original Complaint
Defendant(s).  )    ☐ First Amended Complaint
☐ Check if there are additional Defendants and attach page 1-A listing them.  )    ☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:

☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

☐ Other: _____.

2.  Institution/city where violation occurred: CALIFORNIA HEALTH CARE FACILITY IN STOCKTON CA.

## B. DEFENDANTS

1. Name of first Defendant: _JENNAN ELSON, CHIEF JUDGE_ . The first Defendant is employed as:
_JENNA NELSON CHIEF JUDGE_ at _EASTERN DISTRICT COURT_ .
(Position and Title)                    (Institution)

2. Name of second Defendant: _LEGISLATIVE BODY_ . The second Defendant is employed as:
_CALIFORNIA LEGISLATIVE BODY_ at _CALIFORNIA LEGISLATIVE BODY_ .
(Position and Title)                    (Institution)

3. Name of third Defendant: _THE DIRECTOR OF CORRECTION_. The third Defendant is employed as:
_THE DIRECTOR OF DEPARTMENT OF CORRECT_ at _SACRAMENTO CA_ .
(Position and Title)                    (Institution)

4. Name of fourth Defendant: _R. BURTON, WARDEN, AND_ . The fourth Defendant is employed as:
_LIBRAIAN/LITIGATION COORDINATOR_ at _STOCKTON CA, C.H.C.F_ .
(Position and Title)                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☑ Yes    ☐ No

2. If yes, how many lawsuits have you filed? _1_ . Describe the previous lawsuits:

    a. First prior lawsuit:
       1. Parties: _LA JAIL_ v. _ME WALKER_
       2. Court and case number: _____
       3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
          _I WIN_

    b. Second prior lawsuit:
       1. Parties: _____ v. _____
       2. Court and case number: _____
       3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

    c. Third prior lawsuit:
       1. Parties: _____ v. _____
       2. Court and case number: _____
       3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

## D.  CAUSE OF ACTION

### CLAIM I

1.  State the constitutional or other federal civil right that was violated: MY RIGHTS TO A FEDERAL COURT.

2.  **Claim I.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
    - ☐ Basic necessities
    - ☐ Mail
    - ☑ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☐ Other: _____

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

THE EASTERN DISTRICT COURT OF ~~EASTERN~~ CALIFORNIA SENT MY UNITED STATES DISTRICT COURT OF EASTERN DISTRICT OF CALIFORNIA CIVIL RIGHTS COMPLAINT, 42 U.S.C. 1983 BY A PRISONER, CHIEF DEPUTY JENNA NELSON SENT THE COMPLAINT BACK TWO ~~FOR~~ ME WALKER WHAT ALL THESE STATE ACTOR DID IS CRIMINAL AND IT A VIOLATION OF THE CONSTITUTION OF THE UNITED STATES AND DISCRIMINTION, AND TO CONSPIRE WITH CONSPIRACY TO DENY ME WALKER CIVIL RIGHT COMPLAINT. CALIFORNIA LEGISLATIVE BODY (WHO HAVE THE POWER TO MAKE LAW, AN ORGANIZED BODY OF PERSONS HAVING THE AUTHORITY TO MAKE LAW), CALIFORNIA LEGISLATIVE MADE A LAW THAT THE C.D.C.R. CALIFORNIA PRISON LIBRARY LITIGATION COORDINATOR CAN NOT LIMITED MY CIVIL RIGHT COMPLAINT, 42 U.S.C. 1983 ABOUT MY LAW SUIT AGAINST SAN JOAQUIN HOSPITAL. ONE THING CANNOT HAPPEN IS THE EASTERN DISTRICT COURT, A FEDERAL COURT CAN NOT ASS A STATES PRISON LIBRARY LITIGATION COORDINATOR DO ANY THING TO A FEDERAL CIVIL RIGHT COMPLAINT, 42 U.S.C. 1983

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

I SENT MY CIVIL RIGHTS COMPLAINT 42 U.S.C. 1983 EASTERN DISTRICT COURT AND CHIEF DEPUTY JENNA NELSON JUDGE SENT MY LAW SUIT AGAINST SAN JOAQUIN HOSPITAL BACK TO ME, WALKER

5.  **Administrative Remedies:**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                    ☐ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Claim I?    ☐ Yes  ☐ No
    c.  Did you appeal your request for relief on Claim I to the highest level?    ☐ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## CLAIM II

1. State the constitutional or other federal civil right that was violated: _____
_____.

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

   ☐ Basic necessities ☐ Mail ☑ Access to the court ☐ Medical care
   ☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
   ☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   THE DIRECTOR OF CORRECTIONS, AND R. BURTON THE WARDEN AT STOCKTON PRISON, CALIFORNIA HEALTH CARE FACILITY, DID NOT MAKE COPYS FOR MY CIVIL RIGHTS COM.PLAINT U.S.C. 42 1983, THE LIBRARIAN LITIGATION COORDINAT, MY LAW SUIT IS AGAINST SAN JOAQUIN HOSPITAL CHIEF DISTRICT JUDGE ENTITLED IN RE PROCEDURED RULES FOR ELECRONIC SUBMISSION OF PRISONER LITIGATION FILED BY PLAINTIFFS INCARCERATED AT PARTICIPATING INSTITUTION AUTHORIZING THE E-FILING OF INITIAL CIVIL COMPLAINTS IN CONDITIONS OF CONFINEMENT CASES ONLY FILED BY INCARCERATED INCARCERATED PRISONERS (IN CONDITIONS OF CONFINEMENT CASES ONLY) ←
   MY CIVIL RIGHTS COMPLAINTS 42, U.S.C, 1983 IS TO SAN JOAQUIN HOSPITAL
   THE PRISON DID NOT MAKE COPYS FOR MY CIVIL RIGHTS COMPLAINTS, 42 U.S.C. 1983

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   I CAN'T SEND MY CIVIL RIGHTS COMPLAINT 42 U.S.C. 1983 IN TIME

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☐ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim II? ☐ Yes ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level? ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____

## CLAIM III

1. State the constitutional or other federal civil right that was violated: _____
_____.

2. **Claim III.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____.
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☐ Yes  ☐ No
   b. Did you submit a request for administrative relief on Claim III?  ☐ Yes  ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level?  ☐ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____.

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

5

## E. REQUEST FOR RELIEF

State the relief you are seeking:

I WANT A JURY TRIAL DEMANDED. I WANT ~~~~ FIFTY
MILLIONS DOLLARS AND FIFTY MILLIONS DOLLARS PUNITIVE
DAMAGE. I WANT CHIEF DISTRICT JUDGE JENNA NELSON
CHARGED WITH CONSPIRE WITH CONSPIRACY TO DENIED ME WALKER
THE RIGHT TO COURTS, AND DISCRIMINATION, AND ALL THE STATE
ACTORS CHARGED

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____          _____

DATE                                      SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

## INFORMATION TO PRISONERS SEEKING LEAVE TO PROCEED WITH A CIVIL ACTION IN FEDERAL COURT *IN FORMA PAUPERIS* PURSUANT TO 28 U.S.C. § 1915

In accordance with 1996 amendments to the *in forma pauperis* statute, **AS A PRISONER YOU WILL BE OBLIGATED TO PAY THE FULL FILING FEE OF $350.00 FOR A CIVIL RIGHTS ACTION, $5.00 FOR A HABEAS CORPUS PETITION, OR $505.00 FOR AN APPEAL. If you are not afforded *in forma pauperis* status in a Civil Rights Action, you will be required to pay the $350.00 filing fee <u>plus</u> a $50.00 administrative fee for a total of $400.00.**

If you have the money to pay the full filing fee, send a cashier's check or money order made payable to the U.S. District Court with your complaint, petition, or notice of appeal.

If you do not have enough money to pay the full filing fee when your action is filed, you can file the action without prepaying the filing fee. The court will order the facility where you are held in custody to collect the filing fee from your prison or jail trust account. EACH MONTH YOU WILL OWE 20 PERCENT OF YOUR PRECEDING MONTH'S INCOME TOWARD THE BALANCE UNTIL THE FILING FEE IS PAID IN FULL. The facility will forward payments to the court any time the amount in the account exceeds $10.00. <u>The balance of the filing fee will be collected even if the action is later dismissed, summary judgment is granted against you, or you fail to prevail at trial.</u> In order to proceed with an action *in forma pauperis*, you must complete the attached form and return it to the court with your complaint, habeas corpus petition, or appeal. The form includes your authorization for the agency having custody of you to provide a certified copy of your trust account statement for activity covering the last six months directly to the Court so that your eligibility for *in forma pauperis* status can be determined. Your signature on the form also authorizes the agency having custody of you to collect money from your trust account and forward it to the Clerk of the United States District Court payments if you are granted *in forma pauperis* status. 28 U.S.C. § 1915(b)(2). If you are housed at a non-CDCR facility (such as a local jail or federal facility), you must have your institution complete the certification on the form and attach a certified copy of your prison or jail account statement for the last six months.

If you submit an incomplete form or you are ineligible for in forma pauperis status, your request to proceed *in forma pauperis* will be denied.

The court is required to screen your complaint regardless of the amount of filing fee paid and will dismiss the complaint if:

1.  Your allegation of poverty is untrue;
2.  The action is frivolous or malicious;
3.  Your complaint does not state a claim on which relief can be granted, or
4.  You sue a defendant for money damages and that defendant is immune from liability for money damages.

If you file more than three actions or appeals while incarcerated that are dismissed as frivolous, malicious, or for failure to state a claim on which relief can be granted, you will be prohibited from bringing any other actions *in forma pauperis* unless you are in imminent danger of serious physical injury.

(Revised 06/2016)

### INSTRUCTIONS TO PLAINTIFFS PARTICIPATING IN THE E-FILING PROGRAM AT PARTICIPATING CDCR FACILITIES

This instruction sheet provides Plaintiff with a general overview of the E-Filing pilot programs pursuant to Eastern District of California Standing Order signed by the Chief District Judge entitled "In Re: Procedural Rules for Electronic Submission Of Prisoner Litigation Filed By Plaintiffs Incarcerated at Participating Institutions" authorizing the e-filing of initial civil complaints in conditions of confinement cases only filed by incarcerated prisoners. The pilot program is intended to provide a more efficient, timely and cost-saving approach by which these initial filings are filed in United States District Court for the Eastern District of California. This pilot program, referenced hereinafter as "e-filing program," applies only to participating penal institutions located in the Eastern District of California and only at selected state facilities administered by the California Department of Corrections and Rehabilitation (CDCR). The e-filing programs takes a Plaintiff's initial filing documents (limited to documents described below), scans and then emails them to the Clerk of the Court for filing. The originals are then returned to the Plaintiff for their records. There is no need for a Plaintiff to mail the initial documents or pay for extra copies or postage. Upon filing of the civil complaint, pursuant to 28 U.S.C. § 1915A the complaint will be screened in due course and appropriate orders will issue.

**Scope of E-Filing program:** The e-filing program only applies to cases brought by incarcerated Plaintiffs housed at participating facilities at the time of initial filing who assert claims involving conditions of confinement, such as those brought under 42 U.S.C. § 1983. The program does not apply to any other type of case to be filed by an incarcerated prisoner, including claims challenging the fact or duration of a prisoner's confinement. All attempts to file a civil complaint for matters not covered by the e-filing program will be rejected for filing under the e-filing program. An incarcerated prisoner may file those claims through the normal procedures governing the filing of legal matters.

Under the e-filing program only the following documents are deemed initial pleadings. These initial pleadings and their respective page limits will be only accepted for filing through the e-filing program:

| Pleading | Page Limit |
|---|---|
| Civil Cover Sheet (E-Filing From CDCR Only)(ED Cal 1) | 1 page |
| Civil complaint involving conditions of confinement (preferably using the Court's "Civil Rights Complaint" form or format) | 25 pages |
| Any application to proceed in forma pauperis; motions seeking relief from the e-filing procedures; or motions for emergency relief | 15 pages total for all these documents combined |

The pleadings and their page limits will be strictly enforced. As noted, these documents can only be filed through the e-filing program. Any attempt to file these documents by Plaintiffs incarcerated at a participating CDCR facility through the mail or over-the-counter will be rejected by the Clerk of the Court and returned to the Plaintiff for filing through the e-filing procedures. The only exception would be if the scanner is inoperable for a period of 48 hours. If this occurs, CDCR staff will provide the Plaintiff with paperwork indicating that the Plaintiff may file through means other than e-filing and consistent with CDCR policies for filing legal matters. Additionally, any attempt to file other documents, other than those described above, through the e-filing program will be rejected and must be filed through the normal process governing the filing of legal matters in court.

**How to File:** Plaintiffs shall provide their civil cover sheet (ED Cal 1), the civil complaint and any application to proceed in forma pauperis without prepayment of fees; any motion seeking relief from the e-filing procedures; and any motion for emergency relief, all within the page limits described above.

CDCR staff will scan all initial filings into a preprogrammed digital sender which converts the documents to .PDF format. On the front page of each separate filing, CDCR will stamp the document indicated it has been scanned and emailed. After the documents are scanned, CDCR will promptly email the documents to the Clerk of Court for filing and will return the original documents to the Plaintiff.

The Court will retrieve the e-mailed documents from CDCR and file them in the Case Management Electronic Case Filing system (CM/ECF) of the Court. The Court will e-mail initial case filing instructions for the Plaintiff to an e-mail addressed established by CDCR, along with a Notice of Electronic Filing (NEF) confirming receipt of the filed documents, as well as any other initial filing documents or orders which are immediately provided to a Plaintiff after the initial filing. CDCR staff will deliver these e-mailed documents to the plaintiff in accordance with their procedures for delivering legal mail.

**After this initial filing, all other documents to be filed in a case must be sent and served through the mail in accordance with CDCR procedures governing the filing of legal matters, the Local Rules of this Court and other applicable law. Other than the initial filing documents noted above no other documents will be accepted for filing through the e-filing program.**

1    **DEPUTY COMMISSIONER BLAKE:**    No? Okay. What did they

2    tell you about that? What did the doctors tell you about

3    using the medication?

4    **INMATE WALKER:**  Ain't nobody talked to me about

5    nothing. After I got off of it,  everybody said

6    <Unintelligible> about it. I don't want it.

7    **DEPUTY COMMISSIONER BLAKE:**    Okay.

8    **INMATE WALKER:** I took it for eight, nine years. Why

9    am I going to keep taking something that doesn't help me?

10    I did it then. I'm not going to just volunteer and take

11    stuff that's not beneficial for me. When I, when I did

12    take it, it was beneficial for me to take it.

13    **DEPUTY COMMISSIONER BLAKE:**    Okay.

14    **INMATE WALKER:** I'm cured of that.

15    **DEPUTY COMMISSIONER BLAKE:**    Let's see. I don't have

16    any more questions for you. Thanks for your time, Mr.

17    Walker.

18    **INMATE WALKER:** Yeah, thank you.

19    **PRESIDING COMMISSIONER THORNTON:**    Mr. Walker, I want

20    to follow up on something you just said. You said that you

21    had taken medications for mental illness for a number of

22    years and you-you don't want to take any more. So, do you

23    think that you have a mental illness?

24    **INMATE WALKER:** No.

25    **PRESIDING COMMISSIONER THORNTON:**    Okay. Do you think

1    you did in the past?

2    **INMATE WALKER:** Yeah.

3    **PRESIDING COMMISSIONER THORNTON:**    Okay. So you — I

4    think you said it was cured? Is that right?

5    **INMATE WALKER:** I think I'm cured.

6    **PRESIDING COMMISSIONER THORNTON:**    Okay. So how did

7    it get cured? Do you — Can you explain it to me? Because

8    I'm not sure I understand.

9    **INMATE WALKER:** Because I don't think like I did back

10    in 2009, '10, and '11.

11    **PRESIDING COMMISSIONER THORNTON:**    Okay. So can you

12    explain the difference to me? How you thought then and how

13    you think now? What's the difference?

14    **INMATE WALKER:** I thought about hurting myself then.

15    That's the only thing.

16    **PRESIDING COMMISSIONER THORNTON:**    Okay.

17    **INMATE WALKER:** I don't feel that way  no more.

18    **PRESIDING COMMISSIONER THORNTON:**    Okay. So back

19    then, you were thinking about hurting yourself and you're

20    not thinking about it today?

21    **INMATE WALKER:** No.

22    **PRESIDING COMMISSIONER THORNTON:**    Okay. I'm glad to

23    hear that. Anything else you think is different in how you

24    think now and then?

25    **INMATE WALKER:** No.

1   streets, would you go talk to a doctor or somebody?

2       **INMATE WALKER:** Yeah.

3       **PRESIDING COMMISSIONER THORNTON:**    Okay. So you know

4   how to get help for that?

5       **INMATE WALKER:** Yeah.

6       **PRESIDING COMMISSIONER THORNTON:**    Okay. So, let's

7   look at your Comprehensive Risk Assessment. The doctor

8   found your overall risk rating in that report to be a

9   moderate, notes that to be a higher-moderate. The

10   clinician goes through various risk factors that are

11   relevant to your risk. Looking in the historic category,

12   there were a number of factors that are noted there as

13   relevant for you. They include violence, antisocial

14   behaviors, and traumatic experiences are noted to be

15   partially present. There are a number of other factors

16   there that are noted highly relevant, and those include

17   relationships and association with negative peers,

18   substance abuse, major mental disorder, violent attitudes,

19   and treatment or supervision response. Then moving on to

20   the clinical factors, which are the recent problems. There

21   are a few noted there that also includes treatment or

22   supervision response as partially present. And then there

23   are two factors noted to be highly irrelevant. They

24   include violent ideation and a lack of self-awareness.

25   Looking at your future problems under the risk management

1  category, all five of those factors were noted to be

2  relevant for you, and they include professional

3  <Unintelligible> plans, living situation, personal

4  support, treatment or supervision response, and stress or

5  coping. Mr. Walker, when you're stressed today, how do you

6  deal with that? What do you do to cope with stress?

7      **INMATE WALKER:** I try to read my Bible or read a book.

8      **PRESIDING COMMISSIONER THORNTON:**  Read? Okay. And

9  that helps you calm down?

10      **INMATE WALKER:** Yeah.

11      **PRESIDING COMMISSIONER THORNTON:**  Anything else you

12  do to help you deal with stress?

13      **INMATE WALKER:** I watch TV.

14      **PRESIDING COMMISSIONER THORNTON:**  TV? Okay. If

15  you're feeling angry about something, do you have certain

16  ways that you handle that?

17      **INMATE WALKER:** Yeah. When I'm angry, I try to read my

18  Bible to calm me down.

19      **PRESIDING COMMISSIONER THORNTON:**  Okay. So you also

20  read the Bible to help you calm down. Is there anything

21  else in the Comprehensive Risk Assessment that we haven't

22  talked about that you would like to talk with us about

23  now?

24      **INMATE WALKER:** Yeah. I don't have a drug problem.

25      **PRESIDING COMMISSIONER THORNTON:**  Okay. You don't

1   have a drug problem.

2      **INMATE WALKER:** Never have.

3      **PRESIDING COMMISSIONER THORNTON:**   Okay. Okay.

4   Anything else?

5      **INMATE WALKER:** No.

6      **PRESIDING COMMISSIONER THORNTON:**   Okay. Let's move

7   on then to clarifying questions. We're going to ask your

8   Attorney if he has any questions for you. Mr. Howard, is

9   there any clarifying questions you have for your client?

10      **ATTORNEY HOWARD:**   No questions for Mr. Walker.

11   Thank you.

12      **PRESIDING COMMISSIONER THORNTON:**   Okay. Let's go to

13   closing statements. Mr. Howard, you have 10 minutes. It's

14   10:21 a.m.

15      **ATTORNEY HOWARD:**   Yes. Thank you, Commissioner. So,

16   today, Mr. Walker was forthcoming about the controlling

17   offense and that's what this Board requires, honesty and

18   forthcomingness. Uh, he admitted to hitting his victim,

19   but he did deny stabbing her, and the Board must accept

20   his rendition as long as it's plausible. Uh, he stated

21   that his victim actually attacked him and hit him in the

22   jaw, and then grabbed a knife, and now this was the cause

23   of him hitting her. He also denied any other incidents of

24   domestic violence, uh, with this victim. Now, to address

25   his criminality, Mr. Walker has participated in some self-

1   —

2       **DEPUTY COMMISSIONER BLAKE:**    Oh.

3       **PRESIDING COMMISSIONER THORNTON:**    Did we lose Mr.

4   Howard? Mr. Howard, <Unintelligible> you froze. Mr.

5   Howard, you froze there for a second. Could you back up a

6   couple of sentences maybe?

7       **ATTORNEY HOWARD:**    Oh, yes. Yes. So, to address his

8   criminality, Mr. Walker has participated in self-help

9   programming, including Anger Management from 2016 to 2019.

10  He's done independent religious studies on Jehovah's

11  Witnesses and the Bible, as well as done, um, uh, lots of

12  self-reflection. Page 324 of his master file shows. Mr.

13  Walker's certificates for completion of those Anger

14  Management classes. Now, regarding his parole plans, he is

15  amenable to all DAPO placements and services. Regarding

16  his transitional housing, you would like to live at the

17  SRO Building in Los Angeles, and he would use public

18  assistance and general relief as a means of financial

19  support. Now, the standard before the Board today is

20  whether Mr. Walker poses an unreasonable risk of danger to

21  public safety. And when we look at his RVR record, we see

22  no violence in over 16 years. Uh, he's not identified as a

23  member or associate of any street gang or STG. Now, there

24  was a pervasive pattern of write-ups for disobeying

25  orders, uh, in the past. However, Mr. Walker explained

1   was a pervasive pattern of write-ups for disobeying

2   orders, uh, in the past. However, Mr. Walker explained

3   that those were due to him refusing to take a cellmate,

4   uh, while in the SHU. Uh, he and the Deputy Commissioner

5   discussed that. But in totality, we see very few instances

6   of physical violence in Mr. Walker's institutional

7   history. Now, on, uh, December 29th, 2021, a Comprehensive

8   Risk Assessment was conducted, and the clinician did note

9   that Mr. Walker has remained free of physically violent

10  behavior for approximately 15 years, nor has he incurred a

11  rules violation since 2009. Uh, and also, he appears to be

12  compliant with his medications and compliant with the

13  current recommendations to take care of his recent injury.

14  Now, due, uh, to Mr. Walker's length of incarceration and

15  his current age, he is eligible for elder parole factors.

16  Uh, here, the Board must consider his age, the effects of

17  long-term confinement, and his current health in

18  determining his suitability. Mr. Walker is now 72 years

19  old and at an age that significantly reduces recidivism.

20  He's been incarcerated for 25 plus years and has increased

21  his impulse control. Mr. Walker has a number of serious

22  mental — medical conditions and exclusively uses a

23  wheelchair to ambulate. He has, he has had multiple

24  strokes, which have weakened his right side significantly.

25  He does have Parkinson's disease, and the clinician notes

1  that these physical conditions likely decrease Mr.

2  Walker's ability to commit certain types of violence. With

3  that, we respectfully request that this Board consider Mr.

4  Walker's lack of recent violence and his elder parole

5  factors in determining whether he is suitable for parole

6  today. Submit.

7      **PRESIDING COMMISSIONER THORNTON:**    Thank you. Mr.

8  Walker, this is your opportunity. Would you also want to

9  make a closing statement at this time?

10     **INMATE WALKER:** Yeah. I feel like I'm eligible to be

11  released after being down 25, 27 years. I'm not a violent

12  person unless you start it. That was when I was younger,

13  but I'm 72 now. With all these strokes and

14  <Unintelligible>, I'm not a threat to  nobody. That's it.

15     **PRESIDING COMMISSIONER THORNTON:**    Okay. Thank you.

16  The Deputy Commissioner and I are going to exit the Teams

17  meeting room to deliberate. Our pictures will drop from

18  view. Please remain on the line and we'll come back to

19  this room when we finish our deliberations. We'll go off

20  the record now. The time is 10:25 AM.

21

22

23                    **[RECESS]**

24

25

**CALIFORNIA BOARD OF PAROLE HEARINGS**

**DECISION**

**DEPUTY COMMISSIONER BLAKE:**    We're back on the record.

**PRESIDING COMMISSIONER THORNTON:**    Thank you. We're back on the record. Today's March 11th, 2022. The time is 10:53 AM. We will now reconvene this hearing for the pronouncement of the Panel's decision. All the same parties that were previously identified have returned for the decision in the matter of Mr. Walker, whose CDCR number is K42310, where the offenses of attempted second-degree murder and other charges resulted in a sentence of 29 years. The victim in this case was Cynthia Maddox. In reaching our decision today, we must not act arbitrarily or capriciously and must consider all relevant and reliable information available. In doing so, we must determine if the inmate continues to pose an unreasonable risk to public safety, and a denial of parole must be based on evidence in the record of the inmate's current dangerousness. We are required to give special consideration to your age, long-term confinement, and diminished physical condition when determining your suitability for parole. In this case, the Panel has read and considered the written record before us, including the

**ELMER WALKER    K42310    03/11/2022    DECISION PAGE 1**

1   inmate's central file, the Comprehensive Risk Assessment,

2   Mr. Walker's testimony today, and statements from his

3   Attorney. The confidential portion of the inmate's file

4   was reviewed, but it was not relied upon in making today's

5   decision. Based on the legal standards and the evidence

6   considered, we find that you do pose an unreasonable risk

7   to public safety and are, therefore, not suitable for

8   parole. Today, we did give special consideration to your

9   advanced age, length of incarceration, and your diminished

10  physical condition when determining parole today.

11  Specifically, we determined that these factors reduce your

12  risk for future violence. Today, you are 72 years old and

13  you have been in CDCR custody for 25 years. Physically,

14  you do have a number of serious medical conditions. You

15  require a wheelchair and you have right-sided weakness due

16  to previous strokes, but you are able to independently

17  complete daily living tasks. Cognitively, you do appear to

18  have mild cognitive impairment, likely due to multiple

19  strokes. And we do see that your physical conditions

20  likely do decrease your ability to commit certain types of

21  violence. Today, however, we did find the factors

22  mitigating your current risk are outweighed by factors

23  that aggravate your current risk. And we found that

24  despite giving special consideration to your age, length

25  **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 2**

1  of incarceration, <Unintelligible> outweighed by factors

2  that aggravate your current risk. The first of those being

3  the Comprehensive Risk Assessment. That assessment did

4  determine that you pose a moderate risk of future

5  violence, meaning that you pose a somewhat elevated risk

6  relative to other long-term offenders. Your criminal and

7  parole history is also aggravating. You did have an early

8  onset of criminality, multiple crimes with short intervals

9  in between, crimes escalating in seriousness, and poor

10  performance on supervised release. As a juvenile, you were

11  arrested for firing a weapon within the city limits. You

12  also had antisocial behavior as a juvenile, carrying a

13  knife, a razor, and using it in a fight. As an adult, you

14  did have numerous arrests, including for disorderly

15  conduct, for battery, multiple assaults with deadly

16  weapons, possessing controlled substance. You had a prior

17  attempted murder, grand theft auto, and domestic violence

18  before committing the life crime. We also see on

19  supervised release, you did violate terms of parole

20  several times. You did tell us you absconded four to five

21  times, and we note that you were on probation at the time

22  of this crime. Today, your self-control was found to be

23  aggravating. Throughout your criminal history, you were

24  unable to control your behavior as the result of one or

25  **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 3**

1  more of the following. You did respond to anger in

2  antisocial ways. In your commitment offense, you did use

3  violence in assaulting the victim. We also see that you

4  were impulsive. You did fail to recognize or think of

5  consequences when committing your crimes and engaging in

6  antisocial behaviors. You were also callous towards others

7  and did not consider how your actions would affect victims

8  and others at that time or in the future. And looking at

9  your lack of programming, that was also found to be

10  aggravating. The Comprehensive Risk Assessment identifies

11  risk factors that remain currently relevant for you, such

12  as violence, antisocial behaviors, relationships, and

13  association with negative peers, which was noted to be

14  highly relevant as was substance abuse and your lack of

15  self-awareness. You have not completed programs based on

16  all of your risks. Your institutional behavior is

17  aggravating as you have had serious misconduct while

18  incarcerated. We saw a total of 24 RVRs, most recently for

19  willfully delaying a peace officer in 2009. You did have

20  five write-ups for either violence, threats of violence,

21  most recently in 2008. We did see one write-up related to

22  substance. That was for possession of pruno in 2003. We

23  gave this factor little weight today, though, because of

24  the age of those write-ups. Today, your offender change

25  **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 4**

1  was found to be aggravating as you do reject the need for

2  change. Today, you do lack understanding and self-

3  awareness into the causative factors of your commitment

4  offense, as well as domestic violence and other issues you

5  have. If you haven't figured out why you did what you did,

6  you are more likely to do it or something similar again as

7  you won't know what to watch out for to prevent yourself

8  from being involved in similar behaviors in the future.

9  So, today, you really just refuse to acknowledge or

10 address any of your issues, so when we talked about your

11 commitment offense, you denied many of the actions in that

12 crime including stabbing the victim. You did blame the

13 victim. You said she started it by hitting you in the jaw

14 and grabbing a knife. You said you did respond by hitting

15 her 20 to 30 times in the head <Unintelligible>. Today,

16 you denied ever being violent, except in response to

17 others being violent with you first and portray yourself

18 as the victim of those situations. You also told the Panel

19 that you will fight back in the community if you have

20 issues with anyone because you believe you have the right

21 to defend yourself. However, it does to the Panel that you

22 may not understand when you are actually being the

23 aggressor. I'm hearing some noise. Okay. So, Mr. Walker,

24 the microphone is really sensitive, so just be

25 **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 5**

1    careful if you're scratching on the table or moving

2    papers. It overrides the sound. So just make sure you're

3    not doing that because it might cause an issue. Um, so, we

4    do see in your case, it does appear to go beyond just

5    lacking v self-awareness. It came off as having an

6    attitude of defiance and denying any issue that you had,

7    whether it was violence, domestic violence, substance

8    abuse, or mental illness. So, looking at substance abuse

9    issues, you did tell us you last used marijuana in your

10   birthday in 2018. So, that's really still a rather recent

11   use for us when we look at your overall substance issues.

12   You told us that you don't think you ever were or are an

13   addict or an alcoholic. When you were asked why you used

14   drugs on the street, you said that you — "I did what I

15   wanted to do." And you described using weed a couple of

16   times a week since age 15. You told us that you did not

17   take any Substance Abuse Programming. You don't think you

18   need any. You said that you will stay sober in the

19   community because you will be a Jehovah's Witness and they

20   would kick you out if you do use, but we really didn't

21   hear any tools that you have other than that to help you

22   stay sober in the community, and that's a concern for us.

23   Today, we think you also lack insight into your mental

24   illness. You deny having a mental illness. You did tell us

25   **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 6**

1  you believe you're cured despite having, uh, meeting

2  criteria for having a schizoaffective disorder, bipolar

3  type. You told us — or you told the clinician that you

4  won't get mental health treatment in the community, and we

5  note that you were under a Keyhea order for involuntary

6  medication for many years until 2016. Today, we believe

7  you lack meaningful self-help. It's been really minimal.

8  You took Anger Management from 2016 through 19. We didn't

9  see any programs in other areas such as domestic violence,

10  criminality, violence, substance abuse. You told us that

11  you don't need those or any programs. It also appears that

12  what you took in Anger Management has not been

13  internalized as you got quite angry earlier in the hearing

14  when we were discussing the CRA and the doctor's

15  references to facts from the probation report and the

16  appellate decision. Today, you did not turn in or write

17  any relapse prevention plans, so it doesn't appear you

18  know your triggers for your risk areas or have tools to

19  address them. When you were asked about tools for anger,

20  you were able to name some, however, it did not appear,

21  you were able to use those during the hearing to prevent

22  yourself from becoming angry when discussing the CRA.

23  Today, we also think you lack remorse. We didn't hear any

24  expression of remorse from you for the victim of this

25  **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 7**

1  crime or any of your other crimes. We also think you lack

2  understanding into the impacts of your crimes on that

3  victim, other victims, and you haven't done anything to

4  make amends for your crimes. Today, throughout the

5  hearing, you've been minimizing your conduct and blaming

6  others, and minimizing does show a lack of insight and a

7  continued pattern of criminal thinking. Today, your parole

8  plans are also aggravating. You do lack concrete,

9  realistic parole plans, so there is a nexus between your

10  lack of parole plans and your current dangerousness. So,

11  we saw that you don't have transitional home acceptance,

12  you don't have <Unintelligible> to continue self-help in

13  the community, you don't have support letters or relapse

14  prevention plans. We note that you were homeless and

15  living on the streets at the time of the commitment

16  offense. A lack of concrete plans really put you at risk

17  of being in the same exact situation upon release. Now,

18  let me check in with my colleague and see what additional

19  comments he'd like to add.

20      **DEPUTY COMMISSIONER BLAKE:**    Well, I concur with the

21  decision, and I concur with the reasons provided by

22  Commissioner Thornton. I want to make sure you understand

23  that we appreciate that you did get involved in, uh, in,

24  uh, some classes through Mental Health, including Anger

25  **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 8**

1    Management. Um, uh, you said, uh, after COVID, it was hard

2    to get into that. I think they might be starting that up

3    again soon, hopefully. Uh, you did 60 hours of it. Uh, I

4    know you've had, uh, a series of strokes, so sometimes

5    it's hard to remember things. So, I know that Commissioner

6    Thornton will have some suggestions for you, but I will

7    just say, I know that you completed it. You-you did 60

8    hours or so. But sometimes, you have a hard time

9    remembering things, so I would recommend if you get a

10   chance to sign up for that again, it'll really help you

11   out and it'll just make your life easier in prison and

12   when you get out of prison, too. So, uh, the Commissioner

13   has laid out some things that you need to work on, but I

14   just want to let you know that we-we know you tried with

15   Anger Management, and we also, um, acknowledge that

16   whatever you were doing, um, with, uh, involuntary

17   medication doesn't seem to be a problem anymore, and I'd

18   like to congratulate you for that. Um, but I know the

19   Commissioner is going to have some suggestions for you,

20   which probably will involve keeping an eye on your mental

21   health and trying to learn how to manage it, even if

22   you're not in prison anymore. But I want to acknowledge

23   that we do see some improvement in your behavior over the

24   last few decades. Um, we're a little concerned about you,

25   **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 9**

1  um, sort of having, uh, an attitude that's, uh, being

2  defensive and needing to protect yourself right away when

3  not everyone is really a threat to you. So, um, I hope you

4  understood today that we're trying to help you. Uh, we-we-

5  we did the best we could, but you got some work that you

6  need to do as well. So, I wish you luck, sir. Thank you.

7      **PRESIDING COMMISSIONER THORNTON:**    Thank you. Based

8  on these findings, we do conclude that you pose an

9  unreasonable risk to public safety, and accordingly, the

10  Panel finds you unsuitable for parole. Based on you

11  remaining disciplinary-free for 13 years, we find there's

12  clear and convincing evidence that neither a 10- or 15-

13  year denial is appropriate in consideration

14  <Unintelligible> public safety. Instead, your next

15  scheduled parole suitability hearing shall be set in five

16  years' time based on the time necessary for you to address

17  the factors that continue to aggravate your current risk

18  as previously discussed. So, Mr. Walker, we don't like

19  getting someone your age and your condition a five-year

20  denial, but you haven't addressed your issues and you're

21  not even willing to accept that you have those issues. And

22  we want to make sure that you're saving the community and

23  others are safe from you. And so, you know, until you

24  address those issues, you know, you got a lot of work to

25  **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 10**

1    do, and we believe the five-year time is based on the

2    amount of work we think you have to do. And so, um, you

3    haven't really put a lot of your effort into addressing —

4    **INMATE WALKER:** I only have two and a half years left

5    in my sentence.

6    **PRESIDING COMMISSIONER THORNTON:**    Right. We know, we

7    know, we know that, but there is the process called the

8    petition to advance. So you can request an earlier hearing

9    than the denial period we issued today, provided there has

10   been a change of circumstance or new information

11   establishing a reasonable likelihood that you do not

12   require an additional period of incarceration. The

13   petition to advance from 1045-A will be provided to you by

14   your counselors if you make such request in the future.

15   You can submit a PTA form once every three years. Our

16   recommendations are to remain disciplinary-free and earn

17   positive chronos, and then really get into self-help. So,

18   we recommend the areas of Domestic Violence and

19   Relationships, Substance Abuse, Anger Management, and

20   Victim Impact. We really want you to get in the groups and

21   understand what it is that has caused you to respond

22   poorly in those kinds of areas, and then learn tools and

23   then actually use the tools. So, you know, we want to have

24   those become internalized, which means it becomes the new

25   **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 11**

1  way that you respond. So, if you can't get into in-person

2  groups, I know there are ways you can do correspondence

3  groups. In other words, through the mail. You could have —

4  That might be more helpful. You have to see — Maybe that

5  works better for you because you'll have the material and

6  you can read it over and over again. Maybe that would be

7  more helpful for you than going to groups. I'm not sure

8  what kind of learner you are. If you respond better in the

9  groups and seek those out. If there are written material

10  in front of you in your own cell by yourself is better,

11  then do it that way, but figure out what works for you and

12  really concentrate on that. Learning about you, what

13  causes you to have those issues and learning tools, so you

14  can respond differently in the future. So, this decision

15  is not final. It will be reviewed by the Board for up to

16  120 days. You'll be notified in writing if there are any

17  changes to this decision. I want to thank everyone who's

18  participated today in this hearing. The time is now 11:09

19  a.m., and this hearing is adjourned.

20

21

22

23

24

25  **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 12**

1    **ADJOURNMENT**

2    THIS TRANSCRIPT CONTAINS THE PROPOSED DECISION OF THE

3    BOARD OF PAROLE HEARINGS (BOARD) ANNOUNCED AT YOUR RECENT

4    BOARD HEARING AND IS PROVIDED TO YOU IN COMPLIANCE WITH

5    PENAL CODE SECTION 3041.5, SUBDIVISION (A)(4), AND

6    CALIFORNIA CODE OF REGULATIONS, TITLE 15, SECTION 2254.

7    THIS PROPOSED DECISION WILL BECOME FINAL WITHIN 120 DAYS

8    OF THE DATE OF THE HEARING AS REQUIRED BY PENAL CODE

9    SECTION 3041, SUBDIVISION (B), UNLESS THE BOARD NOTIFIES

10   YOU IN WRITING BEFORE THEN THAT THE PROPOSED DECISION HAS

11   BEEN MODIFIED, VACATED OR REFERRED TO THE FULL BOARD,

12   SITTING EN BANC, DUE TO AN ERROR OF LAW, ERROR OF FACT OR

13   NEW INFORMATION PURSUANT TO CALIFORNIA CODE OF

14   REGULATIONS, TITLE 15, SECTION 2042. THEREAFTER, THE

15   GOVERNOR HAS AUTHORITY TO REVIEW THE BOARD'S DECISION AND

16   AFFIRM, MODIFY, OR REVERSE IT PURSUANT TO PENAL CODE

17   SECTIONS 3041.1 AND 3041.2.

18

19

20

21

22

23

24

25   **ELMER WALKER    K42310    03/11/2022    DECISION PAGE 13**

### CERTIFICATE AND DECLARATION OF TRANSCRIBER

I, Joel Casia, am a disinterested party, and have no interest in the outcome of the hearing. Further, I certify this transcript is a true, complete, and accurate record, to the best of my ability, of the recorded material provided for transcription of proceeding for:

In the matter of the Parole   CDC Number: **K42310**
Consideration Hearing of:

ELMER EUGENE WALKER

CALIFORNIA HEALTH CARE FACILITY

STOCKTON, CALIFORNIA

03/11/2022

9:25 AM

Signed: *Joel Casia*

Transcribed by: Joel Casia

Conduit Transcriptions

Copyright 2022 / All Rights Reserved by BPH



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# OOA ACKNOWLEDGMENT RECEIPT

**Offender Name:** WALKER, ELMER E.                    **Date:** 05/26/2022

**CDC#:** K42310

**Current Location:** CHCF-Facility D

**Current Area/Bed:** D 307A1105001L

**From:** Office of Appeals

**Re:** Log # 000000238198

The California Department of Corrections and Rehabilitation, Office of Appeals received your appeal on 05/25/2022. Your appeal has been assigned for review and response.

Pursuant to California Code of Regulations, title 15, the Office of Appeals will complete its review no later than 07/25/2022.

Please be informed that the Office of Appeals will not respond to any inquiries about the status of an appeal prior to the date shown above.

CDCR SOMS OGTT305
OOA ACKNOWLEDGMENT RECEIPT

TO EASTERN DISTRICT COURT
CASE NUMBER 2:22-CV-DD558-DMC
WALKE VS. BURTON

I THE PLAINTIFF ELMER E WALKER
DISAGREE WITH JOEL CASIA ACCOUNT
OF THE RECORD BEING TRUE THAT
THE TRANSCRIPT IS TRUE COMPLETE
AND ACCURATE RECORD TO THE BEST
OF HIS ABILITY OF THE RECORDED
MATERIAL PROVIDED FOR TRANSCRIPTION
OF PROCEEDING FOR:

          IN THE MATTER OF THE
PAROLE CONSIDERATION HEARING OF:
ELMER EUGENE WALKER #K42310

          CALIFORNIA HEALTH CARE FAC.
          STOCKTON, CALIFORNIA
          3-11-2022
          9:25 AM

I WANT THIS COURT TO ORDER UP ALL RECORDS
OF THE 17 PAGES OF THE PSY DOCUMENTS IN MY
WRIT OF HABEAS CORPUS SO I CAN SEE THEM
    ELMER EUGENE WALKER K42310
          Elmer Eugene Walker
               71

THE WORDS THAT I TESTIFIED
TO ON RECORD WHICH NEVER MADE
TO THE OFFICIAL RECORD AND ARE
TRANSCRIPT. ORDER UP VIDEOTAPE OF RECORDING ON 3-11-22

       I STATED THAT THE
DIRECTOR OF DEPARTMENT OF CORRECTIONS
AND THE DEPUTY DIRECTOR CONSPIRE
WITH CONSPRICY TO HAVE THE PSY.
FALSIFY DOCUMENTS IN THE SEVENTEEN
PAGE PSY REPORT THAT I SUBMITTED
TO THE COURT I ASK THIS COURT TO
ORDER UP RECORDS OF THE PSY REPORT
TO PROVE THAT THE PSY FALSIFIED
RECORDS I WANT THE TRANSCIPT OF THE
RECORDS SO THAT I COULD PROVE THAT
THE SEVENTEEN PAGES ARE NO GOOD
IN THIS HEARING, IN MY HABEAS CORPUS
SHOW I NEED RELIEF FROM THIS COURT
FROM THE DECISION THE DEPARTMENT
OF CORRECTIONS MADE UNDER COLEMAN
VS. NEWSOM.

         RESPECTFULLY
         ELMER E. WALKER